DOUDS on Behalf of National Labor Relations Board v. SHEET METAL WORKERS INTERNATIONAL ASS'N, LOCAL UNION NO. 28.

Civ. No. 12093.

United States District Court
E. D. New York.

Jan. 16, 1952.

C., 101 F.Supp. 273, in which statutory injunctive relief was denied on the ground that the evidence failed to establish a boycott within the framework of Section 8(b)(4)(A) of the National Labor Relations Act, 29 U.S.C.A. § 158(b)(4)(A).

There is no new evidence submitted to support this motion, and it is urged only on the citation of what the petitioner deems controlling authority.

It does not follow that because a "labor dispute" exists within the meaning of the broad general definition given the term for the purposes of the Act as a whole, Section 2(9), 29 U.S.C.A. § 152(9), such labor dispute falls within the limitation of Section 8(b)(4)(A). As in the opinion filed, it must be re-emphasized that the evidence fails to show that the respondent ever attempted to induce or force Ferro-Co to employ its members.

The circumstances here disclose only an incidental boycott of the products of Ferro-Co and other manufacturers of radiator enclosures who do not employ members of the Sheet Metal Workers International Association. Allen Bradley Co. v. Local Union #3, International Brotherhood of Elecrical Workers, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939, relied on by the petitioner, is not relevant to the facts in this proceeding. Though the boycott described in this proceeding may be termed, as has been indicated, a labor controversy within the general tenor of the Taft-Hartley Act, nevertheless so far as the relationship between Ferro-Co and the respondent is concerned, Ferro-Co's plight arises incidentally from the result of a voluntary agreement entered into between the respondent and the Heating Association.

In this connection it may be noted that in the Allen Bradley Co. case, supra, the Court, in affirming the existence of a "boycott", makes no distinction between a boycott which is achieved through the coercion of secondary employers by inducing their employees to strike, and one brought about by virtue of mutual agreements with employers without any coercive pressure. See the concurring opinion of Roberts, J., 325 U.S. 814–815, 65 S.Ct. 1542. Conse-

George J. Bott, General Counsel, David P. Findling, Associate General Counsel, Winthrop A. Johns, Asst. General Counsel, and Samuel Ross, Attorney, National Labor Relations Board, all of Washington, D. C., for petitioner.

Boudin, Cohn & Glickstein, New York City, Samuel Harris Cohen, New York City, of counsel, for respondent.

GALSTON, District Judge.

This is a motion for reconsideration of my opinion rendered November 20, 1951, D.

quently, a finding of a boycott there does not necessarily require a finding of a secondary boycott here within the meaning of Section 8(b)(4)(A).

Viewing the situation realistically, what the petitioner seeks to enjoin here is, of course, the boycott by the respondent of the goods manufactured by Ferro-Co. But the evidence shows that the boycott was accomplished by the respondent, not by inducing or encouraging the employees of Dierks to engage in a strike or concerted refusal to handle Ferro-Co's products, but because of an agreement with the Heating Association representing a group of employers. That agreement provided that the work of fabricating and installing radiator enclosures on jobs contracted by the association members would be performed by members of the Sheet Metal Workers International. Whatever objections can be taken to such agreement as being contrary to law, it cannot be regarded as a violation of Section 8(b)(4)(A), because the evidence fails to show that the respondent, in achieving its objective, induced or encouraged the employees of any employer to engage in an unfair labor practice as defined therein.

It would appear that the petitioner would have the court focus its attention narrowly on the Public School 184 situation. To disregard the circumstances leading up to the specific job in question, however, would be to overlook and ignore the true basis of the labor dispute between Ferro-Co and the respondent. Furthermore, the evidence indicates that the work stoppage that occurred on the Public School 184 job was mutually agreed to by Dierks and the respondent. Such was the testimony of Dierks as well as Farrell, who was at the time the secretary of the respondent. If there had been any evidence that Dierks' agreement to the work stoppage was induced through fear of a strike or of other coercive action by the respondent, directly or through Dierks' employees, the validity of the agreement would be subject to doubt. However, Dierks' testimony indicates that his company's action was predicated upon the collective bargaining agreement which he accepted as binding upon it. Moreover, the work stoppage was limited to the installation of radiator enclosures, did not affect any other part of the work on the job, in no way delayed work on the project, and was of a temporary nature. Some three or four weeks later, the Ferro-Co radiator enclosures were installed on the job by the respondent's members without any concessions made or forced on Dierks, the employer, by the respondent. So these circumstances further indicate that any boycott achieved by the respondent was the result of direct and voluntary agreement between the respondent and the Association employers, rather than through any attempt to engage in or to induce or encourage employees to engage in a strike.

In view of the foregoing, therefore, the petitioner's motion for reconsideration should be and is denied.